# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LINDSEY WILLIAMS,                                              Case No. 1:08-cv-899

        Plaintiff,                                          Weber, J.
                                                              Bowman, M.J.

   v.

WARREN COUNTY, OHIO, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, Lindsey Williams, presently incarcerated at the Warren Correctional Institution in Lebanon, Ohio and proceeding through counsel, initiated this civil rights litigation on December 30, 2008, pursuant to 42 U.S.C. §§1983 and 1988, alleging that Warren County, Ohio and the City of Blue Ash, Ohio violated a number of his constitutional rights. Specifically, Plaintiff alleges that both Defendants violated his right to be free of cruel and unusual punishment under the Eighth Amendment, and his right to due process under the Fifth and Fourteenth Amendments. (Doc. 1).

Pursuant to local practice, Defendants' Motions for Summary Judgment (Docs. 26 and 28) have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. (*See* Doc. 20; 28 U.S.C. § 636(b)). For the reasons stated herein, I recommend that Defendants' motions be granted, and that Plaintiff's claims be dismissed with prejudice.

## I. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th

Cir.2007) (internal quotation marks omitted).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations.  After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, inferences are not to be drawn out of thin air.  Rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244-45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"*Matsushita,* 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

In this case, Plaintiff has failed to present anything more than his own conclusory allegations in support of his claims.  Plaintiff's allegations fail to create any genuine issue of material fact because the most critical allegations are refuted by evidence filed of record.  Conclusory allegations, standing alone, are insufficient to demonstrate a genuine issue for trial.

## II. Factual Background

The following facts are largely undisputed.  In accordance with Rule 56 standards, where discrepancies exist, the facts have been construed in Plaintiff's favor except for instances in which record evidence flatly contradicts Plaintiff's allegations.

Late in the evening on December 30, 2006, Warren County Sheriff's Deputy John Smith ("Deputy Smith") responded to Plaintiff's residence – located at 4163 East Forster-Maineville Road – to investigate a domestic disturbance reported to the police by Plaintiff's girlfriend – Sarah Murphy. (Doc. 29, Plaintiff's deposition, at 14-15, 56). When he arrived at Plaintiff's residence, Deputy Smith parked his cruiser on the

roadway near the driveway. (Doc. 28-1, Smith Affidavit at 2).  Deputy Smith approached the residence on foot and was met in the driveway by Plaintiff's brother, Lance Williams. (*Id.*).  Lance Williams complained about Deputy Smith's presence at Plaintiff's residence and stated that, "that bitch [Plaintiff's girlfriend] was just causing problems." (*Id.*). Plaintiff later claimed his brother simply tried to diffuse the situation (Doc. 34).  Deputy Smith then instructed Lance Williams to come and speak with him near Deputy Smith's cruiser in the roadway – away from the residence.  (*Id.*).  Instead, Lance Williams ignored Deputy Smith's requests and went back to the front porch of the residence. (*Id.*).  At this time, Deputy Smith observed the Plaintiff inside the house holding a rife. (*Id.*).

Based upon his observations, Deputy Smith was concerned that as Lance Williams paced back and forth between the house and the driveway, Lance would be within the potential line of fire if Plaintiff began to shoot.  (*Id.*).  Lance paced for several minutes then left the front porch area.  (*Id.*).  At this time, Deputy Smith stepped away from cover behind a vehicle and began to move towards Lance Williams.  (*Id.*).  Lance Williams began to run back towards the house as he noted Deputy Smith approaching. (*Id.*).  Deputy Smith ordered him to stop but Lance Williams failed to do so.  (*Id.*). Therefore, Deputy Smith used his taser on Lance Williams.  (*Id.*).  The taser was effective and the deputies detained Lance Williams and transported him to a safer area. (*Id.* at 3).

As deputies took Lance Williams to a safer area, Plaintiff fired gunshots from the northwest window of his residence. (*Id.*).  He also fired multiple shots toward police cruisers parked near Deputy Smith's cruiser on the roadway near the driveway. (Doc.

29 at 16-17).  For the next three hours, Plaintiff remained inside his residence and held law enforcement at bay with continued gunfire; he shot from the house using a variety of weapons, including four rifles and two handguns.  (*Id.* at 15-16, 57-58).

During this standoff, Plaintiff estimated that he fired between fifty (50) to sixty (60) rounds before he escaped out the back door of his home and into a Warren County Sheriff's cruiser.  (*Id.* at 58-59).  Plaintiff brought into the cruiser a .357 magnum holstered on his shoulder, two rifles, a .9 millimeter handgun and his dog (named Jesse James).  (*Id.* at 58-60).  Plaintiff then drove the cruiser away from the scene and was not contacted by police units until he reached the area of southbound I-275/S.R. 28 in Miami Township.  (*Id.* at 60-64).  These police units attempted to stop the stolen cruiser but Plaintiff fled and a pursuit ensued southbound on I-275.  (*Id.* at 18, 62-63).

By this point, Blue Ash Police Officers – who were not yet involved in the actual pursuit – had received several official police radio broadcasts from the Hamilton County, Ohio dispatcher.  These broadcasts reported that Plaintiff had stolen a sheriff's deputy cruiser, was armed, had fired shots, and was now the subject of a police pursuit.  (Doc. 26-1, Blue Ash Lt. Hartinger Affidavit at 3).

Stop-sticks were deployed on a number of occasions throughout the pursuit in an attempt to end the pursuit.  (*Id.*).  After hitting a set of the stop sticks, Plaintiff initially stopped the stolen cruiser under the Montgomery Road overpass on westbound I-275. (Doc. 26-2, Blue Ash Officer Noel Affidavit at 3).  At that time, Blue Ash Police Officers Scott Noel, Jun Cho and Robert Rockel and Blue Ash Police Sergeant Paul Hartinger were all positioned in their cruisers along I-275 waiting for the pursuit. (Doc. 26-1 at 3-4).  Upon hearing radio transmissions that Plaintiff had hit the stop sticks, Officers Noel

and Rockel drove towards the Montgomery Road overpass and positioned their cruisers in the eastbound lanes on I-275. *(*Doc. 26-2 at 1-2). Sergeant Hartinger re-positioned his cruiser underneath the Cornell Road overpass on I-275 where he could view the action. *(*Doc. 26-1 at 3).

Once positioned, Blue Ash Police Officers observed Plaintiff and saw him partially exit the stolen cruiser with a rifle in his hand.  (Doc. 26-2 at 3). After a few minutes, Plaintiff shut the driver side door and headed westbound on I-275 entering into Blue Ash to flee from the police.  (*Id.*).

In Blue Ash, Sergeant Paul Hartinger (a 26-year veteran and 23-year veteran with the Blue-Ash Police Department) took control of the pursuit as the pursuit officer in charge; he advised Hamilton County Communications Center that Blue Ash units were going to attempt a "PIT maneuver" on the suspect vehicle in order to disable it. (Doc. 26-1 at 4).  As Plaintiff exited westbound on I-275 onto SB I-75, Blue Ash Police Officer Scott Noel (an 18-year veteran and 7-year veteran with the Blue Ash Police Department), attempted to end the pursuit with a PIT maneuver; he struck the left quarter panel of the stolen Sheriff's cruiser with the right front fender of his own cruiser. (Doc. 26-2 at 4).

After the collision, the cruiser driven by Plaintiff spun into the median before he continued southbound on I-75. *Id.*  Sergeant Hartinger and Officer Noel were discussing a second PIT maneuver when Plaintiff exited onto the southbound collector in the area of General Electric.  (*Id.*).  Plaintiff pulled over to the right side and stopped the stolen cruiser at mile marker 13.4 on the southbound I-75 collector ramp.  (*Id.*).  Officer Noel stopped his cruiser approximately 155 feet behind the stolen cruiser.  (*Id.*).  Sergeant

Hartinger stopped his cruiser behind the stolen cruiser.  (Doc. 26-1 *at* 4).  Officer Rockel stopped his cruiser on the left side of the collector ramp, approximately 185 feet behind and to the left of the stolen cruiser.  (Doc. 26-4, Officer Rockel Affidavit at 4).  Then, Plaintiff exited the driver-side of the stolen cruiser with a rifle in his hands and moved towards the front of the cruiser.  (Doc. 26-1 at 5).

Seeing Plaintiff exited the cruiser with the rifle in his hands, Blue Ash Police Officer Cho and Blue Ash Police Sergeant Hartinger yelled verbal commands at Plaintiff to stop and drop his weapon.  (Doc. 26-3, Officer Cho Affidavit at 4).  When Plaintiff moved across the front of the cruiser with rifle in hand towards the cover of a concrete barrier, four Blue Ash police officers closest in proximity to Plaintiff fired their respective weapons at Plaintiff; he was shot twice in the right leg.  (Doc. 26-1 at 4).  Plaintiff was wounded in the right thigh and right calf.  (Doc. 29 at 73).

Plaintiff does not dispute that he stepped out of the cruiser with his loaded rifle in hand, but asserts that his intention was to place the gun on the concrete barrier in the course of surrendering to officers.  He testified in deposition that he was shot after he had taken the time to unload the rifle, placed the rifle down on the barrier, and stepped back four or five steps from the barrier with his arms raised in surrender.  (Doc. 29 at 73-76).  Plaintiff admits, however, that he still had a loaded revolver on his person.  (*Id.* at 76-77).

Defendants dispute Plaintiff's reasons for proceeding toward the concrete barrier with rifle in hand, and his suggestion that he was attempting to surrender at the time he was shot.  This Court has reviewed videotapes from the cruisers of Blue Ash Police Officer Rockel and Sgt. Paul Hartinger, which include audiotape, as well as Plaintiff's

deposition testimony and affidavits of officers involved.  (*See generally* Exhibits to Doc. 26).  While the precise position of Plaintiff's body and hands is not easily determined at the moment shots were fired, what is clear from the video footage is that: 1) Plaintiff exited with his rifle visible in hand; 2) police immediately yelled for him to drop the weapon; 3) less than 2 seconds elapsed between the time Plaintiff exited the cruiser, the time police shouted verbal commands, and the time that shots were fired.  Plaintiff's testimony that he took time to unload the rifle, place it on the concrete barrier, then turned around and took 4-5 steps back from the barrier with his arms raised, is wholly incredible in the face of the contemporaneous video record.

Immediately following the shooting, Blue Ash Police Officer Scott Noel yelled commands at Plaintiff to place his hands over his head as several officers, including Blue Ash Police Officers, approached Plaintiff.  (Doc. 26-2 at 5).  Williams was handcuffed and a .357 revolver was recovered from his person along with numerous rounds of unfired ammunition.  (Doc. 26-1 at 5).  Officers also recovered Plaintiff's rifle (loaded) from the other side of the concrete barrier.  (*Id.* at 5-6).  Plaintiff was administered first aid and was transported by ambulance to University Hospital where he received treatment for his wounds.  (Doc. 29 at 77).

Upon arrival at University Hospital in the morning hours of 12/31/06, emergency room staff determined that Plaintiff had no broken bones and no arterial injury.  Plaintiff alleges in his complaint that Warren County police prevented him from receiving needed surgery "in contravention of medical personnel."  (Doc. 1 at ¶11).  However, this allegation is contradicted by contemporaneous records.  Not only is there no evidence that surgery was recommended, but after administering non-surgical treatment, the ER

physician determined that Plaintiff was "fit to be discharged" to the Warren County Justice Center with out-patient follow-up scheduled for January 12.  (Doc. 29-1).

Plaintiff received follow-up treatment for his injuries at the Warren County Jail. Plaintiff alleges in his complaint that he sat in jail, bleeding and untreated, "for five hours."  (Doc. 1 at ¶12).  Again, however, records contradict this assertion.  Hospital records reflect that Plaintiff was administered pain medication and antibiotics prior to being transported to the jail.  (Doc. 29).  Plaintiff was subsequently provided pain medication and antibiotics at the jail (Doc. 28-3, Health Administrator Mikovich Affidavit and attached medical records at 7, 17).  Plaintiff's medical records reflect that he was seen by medical staff and received various forms of medical treatment, including re-bandaging, nearly every day for the first month of his incarceration.  (*See generally*, Doc. 28-3, medical records at 11-60).

Plaintiff does not dispute that later in his incarceration, "Sick Call" requests were promptly and appropriately responded to.  (*Id.*).  However, Plaintiff alleges in his complaint that upon his initial arrival at the jail at 8 a.m., his medical needs were ignored "until after the detectives had finished with him," a delay of either three or five hours. (Doc. 1 at ¶¶12-13, 16; *see also* Doc. 29 at 31, 36-37 (Plaintiff's deposition testimony that requests to see nurse were denied)).  Plaintiff also alleges that after arriving at the jail, he was extensively interrogated for some hours while still bleeding from his wounds and despite his objections and requests for nursing attention, the officers simply turned off the tape and began to intimidate him.  (*Id.*).  However, he admits that he was examined by a nurse later in the day, and that his wounds were re-bandaged at that time.  (Doc. 29 at 37).

As a result of the events on December 30-31, 2006, Plaintiff was indicted and ultimately pled guilty to: twelve counts of felonious assault, one count of aggravated robbery, one count of inducing panic, one count of improperly discharging a firearm into habitation, one count of failure to comply with an order or signal of a police officer, and four counts of aggravated menacing. (Doc. 29 at 10-11). Plaintiff is currently serving a 22-year sentence at the Warren Correctional Institution in Lebanon, Ohio. (*Id.*).

Following the incident, Blue Ash Police Captain Robert Lilly investigated with the assistance of several members of the Blue Ash Police Department. (Doc. 26-5, Police Chief Wallace affidavit at 2). After review of the investigative report, Chief Wallace determined that the actions of all Blue Ash officers involved in the incident were justified, proper and within policy of the Blue Ash Police Department. (*Id.*). In addition, the Hamilton County Prosecutor's Office reviewed the incident and determined the actions of the Blue Ash Police Officers were justified. (*Id.* at 5).

### III. Analysis of Defendants' Motions (Docs. 26, 28)

In his complaint, Plaintiff sets forth four separate claims - two against Defendant Warren County, and two against the City of Blue Ash. In what is labeled as his first cause of action, Plaintiff alleges that deputies from the Warren County Sheriff's Office prevented him from receiving surgery and took him from the hospital to the jail, refusing him medical attention until detectives had completed their interrogation. (Doc. 1 at ¶¶11-17). In Plaintiff's identified second cause of action, he alleges that the Warren County Sheriff's Office "permitted, tolerated, encouraged and ratified a pattern and practice of abuse of prisoners in custody" including Plaintiff, and that the Sheriff's Office "failed to discipline officers," "refused to thoroughly or reasonably investigate," and

"negligently failed to hire, train or supervise its officers." (Doc. 1 at ¶¶21-22).  Plaintiff asserts that the alleged conduct subjects Warren County to liability for violations of his Eighth, Fifth and Fourteenth Amendment rights.

In his third and fourth articulated claims, Plaintiff alleges that the City of Blue Ash violated the same three constitutional rights, although in a slightly different manner.  In his third cause of action, Plaintiff alleges that Blue Ash police apprehended and shot him while he was "unarmed and surrendering."  (Doc. 1 at ¶29).  In his fourth claim, Plaintiff alleges that the Blue Ash Police Department "permitted, tolerated, encouraged and ratified a pattern and practice of abuse of and excessive force to those it apprehended" including Plaintiff, that it "failed to discipline officers involved in this abuse," that it "refused to thoroughly or reasonably investigate the actions of its officers," and that it "negligently failed to hire, train or supervise its officers."  (Doc. 1 at ¶¶33-34).

Both City and County Defendants argue that Plaintiff's claims fail as a matter of law based upon the undisputed facts in the record.  Some of Defendants' arguments assert a failure to state a claim, arguing that Plaintiff's allegations simply are insufficient to state any violation of Plaintiff's constitutional rights under the Eighth, Fifth, or Fourteenth Amendments.  Warren County additionally argues that it is not en entity subject to suit.  Both Defendants also argue Plaintiff has neither produced any evidence the Defendants have municipal policies or customs that would create liability under 42 U.S.C. § 1983, nor produced any evidence that the Defendants failed to train, supervise, investigate or discipline their officers with "deliberate indifference."

In his responsive memoranda, Plaintiff fails to set forth any specific facts showing that there is a genuine trial issue. Rather, Plaintiff's response merely restates the allegations of his complaint without citation to any evidence to support those allegations.

Where the non-moving party fails to fully respond to a motion for summary judgment, the court is still required to consider all the materials properly before it in order to determine if a genuine issue of material fact exists. *See Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979). Thus, although the non-moving party is required to set forth more than a scintilla of evidence supporting the essential elements of his claims, if he fails to respond, or as in this case, responds only partially, the court still must review the record to discern whether there is any evidence to support Plaintiff's claims. If, after a fair review, the court does not find any such evidence, then the non-moving party will be deemed to have not put forth sufficient evidence to support his claims. *See generally Cacevic v. City of Hazel Park*, 226 F.3d 483, 486 (6th Cir. 2000).

Here, both Defendants are entitled to judgment as a matter of law because close examination of Plaintiff's complaint fails to reveal any specific allegations against the Defendants that would amount to violations of Plaintiff's constitutional rights, violations of municipal policies or customs, or any failure by either Defendant to train, supervise, investigate, or discipline their officers with deliberate indifference.

### A. Claim Against Defendant Warren County

Before addressing arguments that pertain to both Defendants, the Court will first address Defendant Warren County's argument that Plaintiff's claims must be dismissed for failure to state a claim because a county is not *sui juris*, or a person capable of being

sued, under Ohio law.[1]  Unlike a municipal corporation, an Ohio county "is not a legal person or a separate political entity" capable of either suing or being sued.  *See Schaffer v. Bd. Of Trustees of Franklin County Veterans Memorial*, 171 Ohio St. 228, 230, 168 N.E.2d 547 (Ohio Ct. App. 1960).  A county entity may be sued when it has adopted a charter or alternative form of government, *see* Ohio Rev. Code §301.22, or through its board of commissioners, *see* Ohio Rev. Code §305.12, but Plaintiff has never sought to amend his complaint to name the Warren County Commissioners in this case. *See also Barrett v. Wallace*, 107 F. Supp.2d 949, 954-956 (S.D. Ohio 2000)(noting that county sheriff's office not entity capable of being sued).

Plaintiff responds to Defendant's argument with a two-sentence protest, the gist of which is that it is "simply not true."  (Doc. 34 at 3).  Nonetheless, in far more extensive analysis, another court in this district recently agreed that, notwithstanding the lack of Sixth Circuit case law on point, the lack of being *sui juris* under Ohio law "has no bearing" on an Ohio county's amenability to suit under §1983.  *See Stack v. Karnes*, ___ F.Supp.2d ___, 2010 WL 4513968 at **2-6 (S.D. Ohio, October 29, 2010).

Although *Stack* is persuasive, it is unnecessary to decide whether Warren County may be sued under §1983 despite its lack of *sui juris* under Ohio law, because the County is plainly entitled to judgment as a matter of law on other grounds.

## B.  Plaintiff's Failure to Show A Violation of Constitutional Rights

---

[1]Although the interests of justice may have been better served had Defendant presented this defense earlier in this litigation through a motion to dismiss brought pursuant to Rule 12(b)(6), Defendant did properly preserve the defense in its Answer.  (Doc. 9, Sixth Defense).

Assuming arguendo that Defendant Warren County is subject to suit, both Warren County and Defendant City of Blue Ash would nevertheless be entitled to summary judgment based upon Plaintiff's failure to show that either Defendant violated any of his constitutional rights.  To prove that a constitutional violation occurred under 42 U.S.C. § 1983, a plaintiff must establish that: (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed under color of state law.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).   Plaintiff attempts, unsuccessfully, to base his claims upon alleged violations of the Eighth, Fifth, and Fourteenth Amendments.

### 1. Eighth Amendment Claims

Plaintiff's Eighth Amendment claim against Defendant Warren County is premised upon the alleged interference with adequate medical treatment while at the hospital and shortly after his arrival at the jail.  Plaintiff's Eighth Amendment claim against Defendant City of Blue Ash is based upon the fact that Plaintiff was shot while being apprehended.  Both claims, then, involve factual allegations that pertain solely to Plaintiff's arrest and/or pretrial detainment.

Both Defendants are entitled to summary judgment because the Eighth Amendment's "cruel and unusual punishments" clause is inapplicable to pretrial detainees. *See Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006); *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003).  That portion of the Eighth Amendment does not apply "until after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40

(1977).  Therefore, Plaintiff's Eighth Amendment claims against both Defendants fail as a matter of law.

### 2.  Fifth Amendment Claims

Plaintiff alleges his rights to due process under the Fifth Amendment were violated.  Again, both Defendants are entitled to summary judgment because Plaintiff's allegations fail to state a claim as a matter of law.  The Due Process Clause of the Fifth Amendment does not apply to the states, but only to the federal government.  *See United States v. Baker*, 197 F.3d 211, 215 n.1 (6th Cir. 1999); *Stein v. Kent State University Bd. of Trustees*, 994 F.Supp. 898, 903 (N.D. Ohio 1998); *see generally Bolling v. Sharpe*, 347 U.S. 497 (1954)(distinguishing Fifth and Fourteenth Amendments).  Therefore, the Fifth Amendment is inapplicable to this case.

### 3.  Fourteenth Amendment Claims

### a.  Claim Against the City of Blue Ash

Plaintiff alleges his Fourteenth Amendment substantive due process rights were violated by Defendant City of Blue Ash when he was shot and apprehended.  Yet, all excessive force claims must "be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Fourth Amendment analysis is required because the United States Supreme Court has "always been reluctant to expand the concept of substantive due process," so if a specific amendment provides the source of constitutional protection against a specific type of government behavior, then analysis should not proceed under the more generalized concept of substantive due process but under the more specific Amendment.  *See County of Sacramento v. Lewis*, 523 U.S.

833, 842 (1998)(*quoting Collins v. Harker Heights*, 503 U.S. 115, 124 (1992) and *Graham v. Connor*, 490 U.S. at 395). Therefore, as a matter of law, the Fourteenth Amendment does not apply to Plaintiff's claims against the City of Blue Ash.

### b. Claim against Warren County

Plaintiff's Fourteenth Amendment claim against Warren County finds more purchase, in that the law at least supports the possibility of a Fourteenth Amendment claim by a pretrial detainee for failure to provide adequate medical treatment, upon a showing that a defendant "acted with deliberate indifference to the serious medical needs of the pretrial detainee." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). However, and again assuming Warren County is capable of being sued, that Defendant still would be entitled to summary judgment on the record presented.

Mere negligence is not sufficient. Instead, to show deliberate indifference a Plaintiff must satisfy both an objective and subjective test. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to satisfy both tests, a pretrial detainee must show that he was "subjected to a substantial risk of serious harm, and the prison official must actually know of and disregard the risk." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks v. Celeste*, 39 F.3d 125, 127-128 (6th Cir. 1994).

Plaintiff freely admits, and record evidence confirms, that he was transported to the hospital by ambulance without delay after being shot. He was treated by medical personnel, and was released by the treating emergency room physician to the Warren County Justice Center with instructions concerning follow-up outpatient treatment. The conclusory allegations in Plaintiff's complaint that county deputies prevented him from

receiving surgery and otherwise interfered with or delayed his medical care has been completely refuted by hospital medical records, records of Plaintiff's medical treatment at the jail, and Plaintiff's own deposition testimony.  Plaintiff has failed to support his conclusory allegations with *any* evidence that he required but was denied surgery by any county employee on December 31. 2006 or on any other date.

Construing the record in the light most favorable to Plaintiff, the most that is alleged is that Plaintiff's examination by the jail's nursing staff was delayed for a period of 3-5 hours until county detectives completed their interrogation.  However, there is no evidence whatsoever that any such delay constituted deliberate indifference of a serious medical need in this case.  Plaintiff had been examined, treated, and released to jail authorities by emergency room personnel.  He had received both pain medication and an antibiotic at the hospital prior to his release, with prescriptions for the same subsequently provided by jail authorities.

This is not a case involving a delay of a few hours in the face of a true medical emergency, such as an inmate suffering a seizure, or cardiac arrest.  Plaintiff testified that he was "cold and sticky," (Doc. 29 at 31), that it took "a while" for him to receive a blanket after his initial request (*Id*. at 28), and that he continued bleeding in his wheelchair for some period of time and needed his bandages changed.  However, he fails to identify any serious medical need to which any county employee exhibited "deliberate indifference" in violation of the constitutional standard.  Plaintiff does not contend that when he was examined by the nurse a few hours after his initial request, she took any medical action other than changing his bandages.  (Doc. 29 at 31).  In other words, whatever relatively minimal delay may have occurred in re-bandaging the

gunshot wounds does not appear to have caused any harm, because during the brief period of delay, Plaintiff was not experiencing a "serious medical need" that required more immediate attention than that provided. *Compare Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (no evidence that harm resulted from missed dialysis treatment); *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004)(delay in medical attention for more than two days in face of obvious appendicitis did not require verification of resulting harm); *see also Laughlin v. Schiriro*, 430 F.3d 927, 929 (8th Cir. 2005)(lack of evidence that delay for nearly 8 hours in obtaining treatment for heart attack had had detrimental effect precluded finding of objectively serious deprivation of medical care).

In his deposition, Plaintiff suggests that the failure of jail employees to change his bandages frequently enough at some unspecified date later during his incarceration resulted in an infection. One problem with this testimony is that no similar allegations appear in Plaintiff's complaint. In addition, Plaintiff offers no proof other than his own conclusory and non-specific deposition testimony as to when the infection occurred or its cause. Obviously, infections can result for a variety of reasons, most of which would not reasonably suggest even an inference of deliberate indifference.

Here, Defendant has attached to its motion Plaintiff's medical records, which reflect frequent medical attention and daily re-bandaging of Plaintiff's wounds. Based upon Defendant's evidence and the failure of Plaintiff to provide *any* evidence of either the objective or subjective components of a deliberate indifference claim, Defendant is entitled to summary judgment even if Plaintiff's claim is liberally construed to encompass a complaint about the frequency of re-bandaging.

### 4. Fourth Amendment

No Fourth Amendment claim is contained in Plaintiff's complaint.  Nevertheless, in his response to Defendants' motions for summary judgment, Plaintiff argues for the first time that Defendants violated his rights under the Fourth Amendment by shooting him during the initial encounter.  Even if this Court were to grant Plaintiff leave to amend his complaint to include a Fourth Amendment claim - leave that is unwarranted on the record presented - both Defendants would still be entitled to summary judgment on any such amended claim.  First, to state the obvious, no Fourth Amendment claim could exist against the County because Plaintiff was shot by City of Blue Ash officers, not County deputies.

It is almost equally as obvious that no claim could be stated against the City based on the evidence of record.  The use of deadly force is both reasonable and constitutional where "[an] officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009)(*quoting Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).

> "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *** "[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."

*Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007)(*quoting Graham*, 490 U.S. at 396-97).  The most critical factors to be considered in determining the objective reasonableness of specific force used include: "1) the severity of the crime

at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect either actively resisted arrest or attempted to evade arrest by flight." *See Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009)(*citing Graham*, 490 U.S. at 396).

Plaintiff was shot after: (1) he fired at police officers during a three hour standoff; (2) possessed a stolen sheriff's cruiser, and (3) exited the stolen sheriff's cruiser with one visible firearm. Further, Plaintiff ignored the officers' verbal commands after he exited the stolen cruiser. Only then was Plaintiff shot twice in the leg. Given Plaintiff's pattern of aggressive and life-threatening conduct, the officers objectively and reasonably shot Plaintiff in order to stop and apprehend him. Video evidence supports the officers' statements that the use of force ceased as soon as Plaintiff dropped to the ground. Thus, the officers did not use excessive force and as a matter of law Plaintiff's Fourth Amendment rights were not violated.

Even if Plaintiff's allegation that he intended to surrender and was at least in the process of raising his arms were to be believed, the police officers' actions under the split-second circumstances described was clearly not unreasonable. Plaintiff had previously fired, by his own account, at least 50-60 rounds of ammunition during the course of the standoff with police. He had fled in a stolen police cruiser resulting in a high-speed chase, and was known to be armed. He finally stopped and exited the vehicle only after stop-sticks were deployed and his vehicle was forcibly hit by another. When he exited, he had a visible firearm in hand (as well as a fully loaded concealed handgun).[2] The officers' perception of the threat that Plaintiff posed was reasonable

---

[2] Given Plaintiff's admissions during his deposition concerning the handgun, the allegation in the complaint that Plaintiff was "unarmed" and continued assertions in opposing summary judgment that police "shot

given the totality of the circumstances, including the fact that Plaintiff was quickly proceeding toward a concrete barrier from which he could have gained cover for an additional shoot-out. *Compare Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007)(no liability for excessive force in shooting a suspect who fired shots, exited a building with a rifle, and who was believed to be aiming a rifle at other officers, even assuming the suspect was not aiming the rifle at other officers); *Williams v. City of Grosse Pointe Park*, 496 F.3d 482 (6th Cir. 2007)(officer acted reasonably when he shot and killed a suspect where, after the suspect's car was partially blocked, the suspect collided with the officer's cruiser, knocked down another officer and attempted to flee); *Gaddis ex rel. Gaddis v. Redford Township*, 364 F.3d 763 (6th Cir. 2004)(no liability when officers fired sixteen shots and caused multiple injuries to a suspect who had previously sought to evade arrest and drew a knife on officer); *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) (no liability where officer shot and killed a suspect following a high speed chase, when officer reasonably believed the suspect posed a threat to others if he escaped from a blockade, regardless of whether officer was in immediate danger); *Rhodes v. McDannel*, 945 F.2d 117 (6th Cir. 1991) (deadly force justified where officer shot and killed a suspect who approached two officers with a raised machete and failed to heed warnings to halt).

Reasonable minds could only conclude the officers acted reasonably in shooting Plaintiff in the leg to end the matter without further incident. Since no one violated Plaintiff's constitutional rights neither Defendant can be held liable under § 1983.

---

repeatedly at an unarmed man" (Doc. 35 at 5), are spurious.

Therefore, Plaintiff's claims are without merit and Defendants are entitled to judgment as a matter of law.

### C.  Plaintiff's Failure to Show Municipal Custom or Policy

Plaintiff's complaint alleges that "Defendant Warren County, Ohio is responsible through its representative and agent, the Warren County Sheriff's Office for the security and observance of the constitutional rights of inmates."  (Doc. 1 at 24).  Similarly, Plaintiff premises the liability of Defendant Blue Ash in part upon its failure "to discipline officers involved" in the shooting, its "negligent" failure to "train or supervise its officers," and its alleged responsibility for the actions of "its representative and agent, the Blue Ash Police Department."  (Doc. 1 at ¶¶33-34, 36).

A municipality can be held liable under 42 U.S.C. § 1983 only where the municipality itself caused the alleged constitutional violation; a municipality cannot be held liable upon a *respondeat superior* theory.  *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978).  Accordingly, the proper inquiry is whether there is a "direct causal link" between a municipality's custom or policy and the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378 (1989); *Monell*, 436 U.S. at 694 (a government entity is only liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury").

Plaintiff alleges that under the circumstances he was shot either as the result of a municipal custom or policy or the failure to enforce an applicable custom or policy. However, Plaintiff has failed to identify or show the existence of any unconstitutional custom or policy by either County or City Defendant.  With respect to the County, Defendant has placed into the record uncontroverted evidence of comprehensive

policies and procedures concerning access to medical treatment in the jail, including evidence that those policies were followed to the extent of the treatment provided. (Doc. 28-2, Sheriff Sims Affidavit, at ¶¶5-6 and attached policies). Plaintiff testified that he is aware of no other incidents involving inadequate medical care or abuse of prisoners at the jail. (Doc. 29 at 34, 41-42). The Defendant City of Blue Ash has similarly placed in the record evidence of the existence of reasonable use-of-force policies and procedures, as well as evidence that no policies were violated during the incident in question. (Doc. 26-1, affidavit and attached policies at 12-52). Even if some unconstitutional policy or procedure had been identified, Defendants still would be entitled to summary judgment based upon Plaintiff's complete failure to show any causal link between any custom or policy and the alleged violations of any constitutional right.

### D. Failure to Train, Supervise, Investigate or Discipline

#### 1. No Liability Absent Constitutional Violation

Plaintiff's conclusory allegations that Defendants negligently hired, and/or failed to supervise, investigate or discipline respective County and City employees, (Doc. 1 at 21-22, 25-26, 33-34, 37-38), are insufficient to state a claim absent evidence of some constitutional violation. Where municipal authorities have not committed a constitutional violation, as a matter of law a municipality cannot be held liable under § 1983. *See May v. Franklin County Commissioners*, 437 F.3d 579, 586 (6th Cir. 2006)(since municipal authorities did not violate appellant's constitutional rights the municipality could not be liable under § 1983 for a failure to train); *see Weeks v. Portage County Executives Offices,* 235 F.3d 275, 279 (6th Cir. 2000)(where a deputy did not violate an appellant's

constitutional rights the municipality could not be held liable). As discussed above, Plaintiff has failed to prove the existence of any constitutional violation by either City or County Defendants; therefore, neither Defendant can be held liable under §1983.

### 2. Deliberate Indifference for Failure to Train or Supervise

For the same reasons, neither Defendant can be held liable on any claim based upon inadequate training or supervision. Even if Plaintiff had shown some constitutional violation by someone, Defendants would still be entitled to summary judgment on this claim. To succeed on a such a claim under § 1983, a plaintiff must show "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Cabaniss v. City of Riverside*, 231 Fed. Appx. 407, 416 (6th Cir. Ohio 2007)(*quoting Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)); *see Matthews v. Jones*, 35 F.3d 1046 (6th Cir. 1994)(police department not liable on a theory of inadequate training where plaintiff offered no evidence of inadequate training for one officer or second canine officer, the record showed extensive training for another officer, there was no evidence of deliberate indifference by the department, and there was no evidence the plaintiff's injuries were caused by inadequate training). The Supreme Court requires that a municipality's failure to train demonstrate "a 'deliberate' or 'conscious' choice by a municipality - a 'policy' as defined by our prior cases" before a city will be held liable under § 1983. *City of Canton*, 489 U.S. at 389. The focus of the inquiry is to be "on the adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* at 390.

Plaintiff's claims that the City officers or County deputies involved were inadequately trained or supervised are unsubstantiated by the record. Plaintiff has not produced any evidence that either Defendant's training was inadequate for the tasks their respective employees were required to perform, that the Defendants were deliberately indifferent in their training and supervision of their employees, or that Plaintiff's injuries were caused by inadequate training. As a matter of law, Defendants are not liable for a failure to train or supervise with deliberate indifference under § 1983.

### 3. Failure to Investigate or Discipline

At the outset, a claim of failure to investigate or discipline requires a plaintiff prove a municipality had a policy or custom of failing to investigate or discipline, as opposed to a mere failure to investigate or discipline on a single occasion. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (1999); *Andrews v. Fowler*, 98 F.3d 1069, 1074-75 (8th Cir. 1996). Moreover, a plaintiff must prove a municipality's policy was the "moving force" behind an alleged injury. *See Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994); *see also Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999) (city not liable where plaintiffs "produced no evidence indicating that the City either on this occasion or in the past failed to investigate and discipline the use of excessive force... where such discipline was justified").

In this case, the Defendant City has produced evidence that the use of force was fully investigated. Blue Ash Police Captain Robert Lilly, among other members of the Blue Ash Police Department investigated, and Chief Wallace determined that the actions of all officers involved were justified, proper and within policy of the Blue Ash Police Department. Further, the Hamilton County Prosecutor's Office reviewed the

incident and determined the actions of the involved officers were justified. The investigators' agreement that the actions of the officers involved in the incident were justified does not provide any basis for Plaintiff's claim.  A municipality is not liable for failure to conduct an adequate investigation merely because investigators or reviewers decide to believe the officers' version of the facts.  Thus, Defendants are entitled to judgment as a matter of law that they are not liable for failure to investigate or discipline the officers involved.

### IV. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT:**

1.   Both Defendants' motions for summary judgment (Docs. 26 and 28) be **GRANTED**; and that

2.   This case be dismissed with prejudice from the active docket of this Court.


 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION


LINDSEY WILLIAMS,                                    Case No. 1:08-cv-899

            Plaintiff,                          Weber, J.
                                                    Bowman, M.J.
    v.

WARREN COUNTY, OHIO., et al.,

            Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN  (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).